UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| WESTLEY CHAD-GRANT SIMMONS, SR. | CIVIL ACTION NO. 25-0098 |
| | SECTION P |
| VS. | |
| | JUDGE TERRY A. DOUGHTY |
| WILLIAM BENNETT, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

## REPORT AND RECOMMENDATION

Plaintiff Westley Chad-Grant Simmons, Sr., a prisoner at Caldwell Correctional Center ("CCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately January 27, 2025, under 42 U.S.C. § 1983. He names the following defendants: Sheriff William 'Clay' Bennett, Chief Deputy Jack McKeithen, Warden Kevin Wyles, Deputy Warden David Callender, Major Josh Frederick, Lieutenant Mayes,[1] and Lieutenant Trenchell.[2]

For reasons that follow, the Court should stay Plaintiff's claim that Lieutenant Mayes used excessive force when she choked him, dug her nails into his neck, and placed her knee and weight on his pelvis and "private area." The Court should retain Plaintiff's claims that Lieutenant Trenchell tazed him, that Lieutenant Mayes tazed him, and that Major Frederick tripped and tazed him. The Court should dismiss Plaintiff's remaining claims, including his official capacity claims against Defendants Frederick, Mayes, and Frederick, and his requests to prosecute, and terminate the employment of, Mayes and Frederick.

---

[1] Plaintiff also refers to Lieutenant Mayes as "Ms. Mayes." [doc. # 1, p. 12].

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

**Background**

 Plaintiff claims that on either November 9 or 10, 2024, Lieutenant Trenchell "tazed" him even though he was "fully compl[iant] with both hands on [a] wall" and facing the wall.  [doc. # 13, p. 2].  After Trenchell's use of force, Plaintiff was placed in a restraint chair.  *Id.*

 Plaintiff claims that approximately 2.5 hours later, at approximately 9:10 a.m., while he was fully chained in the restraint chair, Lieutenant Mayes entered his holding cell and shocked him with a tazer.  [doc. # 13, p. 2].  He claims that when he asked to speak with a higher-ranking officer, Lieutenant Mayes attacked him with excessive force, choking him with both of her hands until he was unable to breathe, digging her nails into his neck, and placing her knee and weight on his pelvis and "private area."  [doc. #s 1, pp. 4, 5, 13, 20; 6, p. 2].  Plaintiff states that he had to grab Mayes' leg and throw her off him to avoid dying, being choked unconscious, or having a heart attack or stroke due to his high blood pressure.  *Id.* at 13.  He maintains that he never posed a threat because he was fully restrained in the restraint chair and complied with orders.  [doc. # 13, p. 3].

 Plaintiff alleges that after the use of force, Mayes falsely charged him with a "sex charge," alleging that Plaintiff touched her inappropriately during the incident above.  [doc. # 1, p. 13].  The charge is pending.  [doc. # 13, p. 5].

 Plaintiff states that on November 13, 2024, at approximately 12:40 p.m., Major Frederick utilized excessive force for no reason, tripping him while he was walking with both hands behind his back and "in full compliance" and then shocking him with a "stun gun" or "tazer" nine times in his back while he was "flat down on [his] stomach with both hands behind [his] back with [his] legs cross[ed]."  [doc. #s 1, pp. 4, 5, 13, 19; 6, p. 3].

Plaintiff claims that at approximately 1:10 p.m. the same day, in "booking," Major Frederick tripped him again and shocked him nine more times with the stun gun even though Plaintiff was "in full compliance." [doc. # 1, pp. 4, 5, 19]. Frederick allegedly ignored Plaintiff when he begged for mercy and told Frederick that he had high blood pressure. *Id.* at 14. Ignoring Plaintiff's screams for help, Frederick allegedly told Plaintiff, "this is how we do it in the hills." *Id.* Frederick caused Plaintiff to fall and chip two of his teeth. *Id.* at 13. Plaintiff also suffered a damaged back muscle, nerve damage in his neck and back, and burn marks from the tazer. [doc. #s 1, p. 15; 13, p. 4].

Plaintiff claims that after Frederick's uses of force, Frederick placed him in a holding cell until November 15, 2024, where he lacked a mattress, a sheet, and a blanket. [doc. # 13, pp. 4-5]. On November 15, 2024, Frederick brought Plaintiff a medical mattress. *Id.*

In his initial pleading, Plaintiff claims that Sheriff Bennett was deliberately indifferent to his "serious mental help 'medical needs.' [sic]." [doc. # 1, p. 17]. He also alleged that Chief Deputy McKeithen and Warden Wyles were deliberately indifferent to his serious medical needs. *Id.* at 17-18. In an amended pleading, Plaintiff alleges that he had to wait 89 days (from November 13, 2024, to February 10, 2025) to receive medical care for his neck, back, trauma, and anxiety. [doc. # 13, pp. 5-6]. To date, he has not received an appointment with a dentist or a psychologist. *Id.* at 6.

Plaintiff claims that Sheriff Bennett, Chief Deputy McKeithen, Warden Wyles, and Deputy Warden Callender "never investigated" or considered his grievance. [doc. # 1, pp. 15-16]. He similarly alleges that Deputy Warden Callender and Sheriff Bennett failed to answer his grievances. *Id.* at 16, 17, 18.

Plaintiff claims that Sheriff Bennett, Chief Deputy McKeithen, and Warden Wyles failed to discipline staff members involved in the uses of force described above.  [doc. # 1, pp. 17-18].

For relief, Plaintiff seeks punitive damages, compensatory damages, the termination of Defendants Mayes' and Frederick's employment, and the prosecution of Mayes and Frederick. [doc. # 1, p. 5].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis.  As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3]  *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*).  Because he is proceeding in forma pauperis*,* his Complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly,* 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett,* 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.,* 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Twombly,* 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal,* 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp,* 632 F.3d 148, 152-53

(5th Cir. 2010).  Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).  A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted).  Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. *Heck v. Humphrey* and *Wallace v. Kato*

Plaintiff claims that when he was fully restrained in a restraint chair, Lieutenant Mayes choked him with both of her hands until he was unable to breathe, dug her nails into his neck, and placed her knee and weight on his pelvis and "private area."  [doc. #s 1, pp. 4, 5, 13, 20; 6, p. 2].  He states that he had to grab Mayes' leg and throw her off him to avoid dying, being choked unconscious, or having a heart attack or stroke due to his high blood pressure.  *Id.* at 13.  He maintains that he never posed a threat because he was fully restrained and complied with the correctional officers.  [doc. # 13, p. 3].

Plaintiff alleges that after the use of force, Mayes falsely charged him with a "sex charge."  [doc. # 1, p. 13].  In a Disciplinary Report that Plaintiff attaches to his pleading, Mayes

reported that after Plaintiff escaped his restraints, she tried to "place him back in the restraints[,]" but he "started fighting" so she placed her forearm on his chest and pushed him back to make him sit still. [doc. # 1-2, p. 18]. Mayes stated that Plaintiff then reached around her thigh and grabbed her vagina and thigh with his right hand. *Id.* Plaintiff was arrested and charged with sexual battery; his charge remains pending.[4]

If Plaintiff is convicted of his pending sexual battery charge, he may not be entitled to seek relief for the excessive force claims above until any conviction is reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. A successful civil rights action that would necessarily imply the invalidity of the plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477 (1994).

While the rule in *Heck* does not extend to pending criminal matters, successful claims under Plaintiff's allegations could necessarily imply the invalidity of any future conviction.[5] *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (finding that the *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated, not to pending criminal charges).

To explain, Plaintiff suggests that he did nothing wrong: that he did not pose a threat, that he was compliant, that he was fully restrained, that he was defending himself, and that he

---

[4] TELEPHONE CALL TO CALDWELL PARISH DISTRICT ATTORNEY, (April 11, 2025); [doc. # 13, p. 5].

[5] A successful claim will not necessarily imply the invalidity of a conviction "if the factual basis for the conviction is temporally and conceptually distinct from" the claim. *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).

therefore did not commit the crime with which he is charged.  He maintains that he did not sexually batter Defendant Mayes; rather, he grabbed her leg to throw her off him and avoid dying, being choked unconscious, or having a heart attack or stroke due to his high blood pressure.

In Louisiana, "Sexual battery is the *intentional* touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when any of the following occur: (1) The offender acts without the consent of the victim."  LA. REV. STAT. § 14:43.1 (emphasis added).  If this Court held that Mayes used excessive force, it would (1) lend credence to Plaintiff's contention that he only intended to grab Mayes' leg and remove her from his person to defend himself from excessive force and (2) thereby 'imply' that Plaintiff did not *intend* to touch the "genitals of the victim" and did not, consequently, commit a sexual battery. *See DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656 (5th Cir. 2007) (finding that because the plaintiff claimed he did nothing wrong, his excessive force claim was barred by *Heck*; the claim would necessarily imply the invalidity of his conviction of aggravated assault on an officer).  Otherwise stated, prevailing on the excessive force claims above could constitute a collateral attack on the validity of a future conviction.

Successful excessive force claims could imply the invalidity of a future conviction for another reason.  Under LA. REV. STAT. § 14:18(7): "The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct.  This defense of justification can be claimed . . . [w]hen the offender's conduct is in defense of persons or of property under any of the circumstances described in

8

Articles 19 through 22." Under Article 19, "The use of force or violence upon the person of another is justifiable . . . [w]hen committed for the purpose of preventing a forcible offense against the person . . . , provided that the force or violence used must be reasonable and apparently necessary to prevent such offense." LA. REV. STAT. § 14:19(A)(1)(a). Here, if Plaintiff proved that Mayes used excessive force before he attempted to grab her to throw her off him, he would essentially prove that even if he did intend to touch the "genitals of the victim[,]" his actions following the excessive force amounted to justifiable self-defense, thus undermining a potential conviction.[6] *See generally Stave v. Morrison*, 45,620, 55 So. 3d 856, 864 (La. App. 2 Cir. 11/24/10) (observing that the "defense of justification can be claimed when any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm" and analyzing whether the criminal defendant's oral battery and rape were justified).

Federal courts should stay civil rights claims that attack the legality of a detainee's arrest, prosecution, and detention until the allegedly improper state prosecution concludes. *See Kato*, 549 U.S. at 393-94. Critically, "If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim *related to* rulings that will likely be made in a pending or

---

[6] In *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996), the Fifth Circuit held that a Louisiana conviction for battery of an officer—a crime for which justification is an affirmative defense—prevented the plaintiff from suing for excessive force in connection with the incident. The court reasoned that "if the plaintiff proved his excessive force claim, he would essentially be proving that his battery was justified, which would undermine his conviction." *Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004) (discussing *Hudson*). Similarly, in *Arnold*, 100 F. App'x at 323, the court reasoned: "[C]ertain convictions will prevent a plaintiff from bringing an excessive force claim. For example, we have held that a Texas conviction for aggravated assault on a police officer bars claims for excessive force related to the same conduct. . . . Texas law permits an officer to use any force-even deadly force-to protect against an aggravated assault. *Sappington*, 195 F.3d at 237. Because any force was justified in response to an assault, a finding that the officers used excessive force would necessarily mean that the plaintiff had not committed aggravated assault."

anticipated criminal trial), it is within the power of the district court . . . to stay the civil action until the criminal case . . . is ended." *Id.* (emphasis added); *see Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (opining that courts *should* stay proceedings "until the pending criminal case has run its course . . . .").

Here, Plaintiff's excessive force claims (i.e., that Mayes choked him, dug her nails into his neck, and placed her knee and weight on his pelvis and "private area") are at least *related to* rulings that will likely be made concerning his pending charge.[7]  Accordingly, the Court should stay these claims pending the outcome of Plaintiff's ongoing criminal prosecution.[8]

### 3. Excessive Force

As above, Plaintiff claims that on either November 9 or 10, 2024, Lieutenant Trenchell "tazed" him even though he was "fully compl[iant] with both hands on [a] wall" and facing the wall.  [doc. # 13, p. 2].

Plaintiff next claims that approximately 2.5 hours later, at approximately 9:10 a.m., while he was fully chained in the restraint chair, Lieutenant Mayes shocked him with a tazer.  [doc. # 13, p. 2].

Plaintiff claims that on November 13, 2024, Major Frederick utilized excessive force for no reason, tripping him while he was walking with both hands behind his back and "in full

---

[7] Plaintiff's claim that Mayes tazed him is temporally distinct from his pending criminal charge and should not be stayed.  The undersigned discusses that claim below.

[8] *See Mackey*, 47 F.3d at 746 ("At this point it is simply premature to determine whether or not Mackey's damage claims are barred under *Heck*. . . . The court [should] stay proceedings in the section 1983 case until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two."); *Davis v. Zain*, 79 F.3d 18, 19 (5th Cir. 1996) ("[I]f some presently unforeseen or unarticulated conflict arises between the criminal retrial and the pending § 1983 case, the district court may consider the propriety of a stay . . . .").

compliance" and then shocking him with a "stun gun" or "tazer" nine times in his back while he was "flat down on [his] stomach with both hands behind [his] back with [his] legs cross[ed]." [doc. #s 1, pp. 4, 5, 13, 19; 6, p. 3].   He claims later the same day, Major Frederick tripped him again and shocked him nine more times with the stun gun even though he was "in full compliance."  [doc. # 1, pp. 4, 5, 19].  Frederick allegedly ignored Plaintiff when he begged for mercy and told Frederick that he had high blood pressure.  *Id.* at 14.  Ignoring Plaintiff's screams for help, Frederick allegedly told Plaintiff, "this is how we do it in the hills."  *Id.*  Frederick caused Plaintiff to fall and chip two of his teeth.  *Id.* at 13.  Plaintiff also suffered a damaged back muscle, nerve damage in his neck and back, and burn marks from the tazer.  [doc. #s 1, p. 15; 6, p. 4].

When a prison official is accused of using excessive physical force in contravention of the Eighth Amendment's Cruel and Unusual Punishments Clause, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  "Force beyond that reasonably required to maintain or restore discipline is 'wanton and unnecessary.'"  *Perez v. Collier*, 2021 WL 4095263, at *2 (5th Cir. Sept. 8, 2021) (quoting *Hudson*, 503 U.S. at 7).  "This standard looks to an official's subjective intent to punish."  *Id.*

However, not every malevolent touch by a prison guard gives rise to a federal cause of action.  *Hudson*, 503 U.S. at 9.  The Eighth Amendment does not protect against "*de minimis*" use of physical force, so long as the use of force is not of a sort "repugnant to the conscience of mankind."  *Id*. (citation and internal quotation marks omitted).  Courts consider the following factors: (1) the extent of the injury suffered; (2) the need for application of force; (3) the

relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999).

Here, the Court should retain these excessive force claims against Lieutenant Trenchell, Lieutenant Mayes, and Major Frederick. Plaintiff alleges that he suffered greater-than-de minimis injuries, that the defendants had no need to apply force, that he did not pose a threat, and that defendants made no effort to temper their uses of force.

**4. Conditions of Confinement**

Plaintiff claims that after Frederick's uses of force on November 13, 2024, Frederick placed him in a holding cell until November 15, 2024, where he lacked a mattress, a sheet, and a blanket. [doc. # 13, pp. 4-5]. On November 15, 2024, Frederick brought Plaintiff a medical mattress. *Id.*

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of the "minimal civilized measure of life's necessities."[9] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish

---

[9] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving

deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[10]  However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

Here, Plaintiff does not state a constitutional claim.  He does not plausibly allege that he endured an extreme deprivation of any life necessity because he lacked a mattress, a sheet, and a blanket for approximately two nights. *See Hope v. Harris*, 861 F. App'x 571, 583 (5th Cir. 2021) ("[A]lthough Hope also generally alleges excessive noise and sleep deprivation, . . . it is not clear if the alleged noise is serious enough to cause sleep deprivation or how much sleep Hope actually gets. Without such allegations, Hope has not alleged that he 'has been deprived of the

---

standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

[10] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

minimal measure of life's necessities.'").  Nor does Plaintiff plausibly allege that he was exposed to a substantial risk of serious harm because he lacked these items.  Lacking a mattress, a sheet, and a blanket for two nights could deprive one of sleep or warmth and thereby expose one to harm, but the deprivation of sleep and/or warmth for two nights is not, absent more, extreme and does not expose one to a *substantial* risk of *serious* harm.[11]  The undersigned is sympathetic and does not condone the defendant's alleged actions (or inaction), but ultimately Plaintiff does not plausibly allege the type of "'cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help'" that the Fifth Circuit has "recognized as necessary to constitute deliberate indifference."  *See Davis v. Lithicum*, 574 F. App'x 379, 380 (5th Cir. 2014).  The Court should dismiss this claim.

### 5. Failure to Read *Miranda* Rights

Plaintiff claims that he was not read his rights under *Miranda v. Arizona*, 384 U.S. 436, 439 (1966).  The alleged failure to read *Miranda* warnings, however, did not violate Plaintiff's constitutional rights and "cannot be grounds for a § 1983 action."  *Chavez v. Martinez*, 538 U.S. 760, 772 (2003); *see Foster v. Carroll Cty.*, 502 F. App'x 356, 358 (5th Cir. 2012).  A "violation

---

[11] *See Jarvis v. Hall*, 2023 WL 3818377, at *4 (5th Cir. June 5, 2023) (opining, where the plaintiff lacked clothing, bedding, and personal hygiene items for 3-7 days, that, *inter alia*, the "temporary deprivations" were not extreme "in light of their short duration.") (citing *Novak v. Beto*, 453 F.2d 661, 665-66, 69 (5th Cir. 1971) (short-term solitary confinement without full bedding was not severe); *Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996) (short-term lack of showers and sheets was not severe); *see also Grissom v. Davis*, 55 Fed. Appx. 756, 758 (6th Cir. 2003) (seven days without a mattress, sheets, or a blanket was not a deprivation of basic human needs and did not cause serious harm); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping with no mattress or blanket for four days on a concrete slab in a cell located 10 feet from an exterior door during winter did not deny plaintiff the minimal civilized measures of life's necessities); *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir.1995) (placement in a cell without clothes, running water, a mattress or a blanket for two days was not unconstitutional when the inmate did not suffer any injury or adverse health consequences).

of the *Miranda* rule[]" does not provide "a basis for a claim under § 1983." *Vega v. Tekoh*, 597 U.S. 134, 141 (2022).  The Court should dismiss this claim.

## 6. Medical Care

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)).  A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim).  A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016).  "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.  Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or

negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff's claim that Sheriff Bennett was deliberately indifferent to his "serious mental help 'medical needs'" is entirely conclusory. For added context, the undersigned presents Plaintiff's allegations verbatim:

> Sheriff William 'Clay' Bennett deliberate indifference to Westley Chad-Grant Simmons serious mental help 'medical needs' violated Eight Amendments rights and United States Constitution and 14th Amendments 'Due Process' by fail to investigated seriousness of claim on Grievances filed on Ms. Mayes and Major Fredericks for abusive authority, cruel in unusual punishment, and excessive force in violence. [sic].

[doc. # 1, p. 17]. As to Defendants McKeithen and Wyles, Plaintiff at best presents formulaic recitations of causes of action, which are insufficient to state plausible claims:

> Jack McKiethen 'Chief Deputy' delibrate indifference to Westley Chad-Grant Simmons, Sr serious medical needs violated 8th Amendments and 14th Amendments Due Process for failer to investigate Warden Kevin Wyles, Asst. Warde David Callender, Major Frederick, Ms. Mayes In violation of my constitution rights of excessive force, cruel In unusual punishments, Abuse his authority completely by ignoring standard prison policy. Acted under the color of state law knowingly and intentionly. [soc].

*Id.* at 17-18.

The Court should dismiss these all-too-conclusory claims.

In an amended pleading, Plaintiff alleges that after he asked a correctional officer for medical treatment, he had to wait 52 days to receive medical care for his neck, back, trauma, and anxiety. [doc. # 13, pp. 5-6]. To date, he has not received an appointment with a dentist or a psychologist. *Id.* at 6. Plaintiff, however, does not name a defendant responsible for the delay; and to be sure, he does not connect these latter claims to the allegations in his initial pleading

against Defendants Bennett, McKeithen, and Wyles. Accordingly, the Court should dismiss these claims.

**7. Investigating Grievances**

Plaintiff claims that Sheriff Bennett, Chief Deputy McKeithen, Warden Wyles, and Deputy Warden Callender "never investigated" or considered his grievances. [doc. # 1, pp. 15-16]. He similarly alleges that Deputy Warden Callender and Sheriff Bennett failed to answer his grievances. *Id.* at 16, 17, 18.

A prisoner, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); *see Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process.").

In *Sandin v. Conner*, 515 U.S. 472, 475 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. *See Taylor v. Cockrell*, 92 Fed. App'x. 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated his constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) ("[The plaintiff] does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."). Here, accordingly, the Court should dismiss Plaintiff's claims.

**8. Failure to Discipline**

Plaintiff claims that Sheriff Bennett, Chief Deputy McKeithen, and Warden Wyles failed to discipline staff members involved in the uses of force described above. [doc. # 1, pp. 17-18].

A supervisory official may be held liable under Section if he "affirmatively participate[s] in acts that cause constitutional deprivation" or "implement[s] unconstitutional policies that causally result in plaintiff's injury." *Baker v. Putnal,* 75 F.3d 190, 199 (5th Cir.1996) (citing *Mouille v. City of Live Oak, Tex.,* 977 F.2d 924, 929 (5th Cir.1992)).

Here, Plaintiff does not allege that Bennett, McKeithen, or Wyles were involved in the uses of force or implemented an unconstitutional policy. *See Lentworth v. Potter*, 255 F. App'x 903, 905 (5th Cir. 2007) (holding, where the plaintiff alleged that supervisory officials were informed of retaliatory acts and did not take corrective action, that the plaintiff failed to allege that the defendants were involved in the retaliation or implemented an unconstitutional policy); *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) (finding a claim "wholly insufficient" where the plaintiffs alleged only that a city ratified an officer's actions because the city refused to discipline the officer and knew that the officer's version of the event was false); *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 922 (5th Cir. 2021) ("Calhoun averred that Houston had a policy of 'failing' to 'properly discipline,' 'restrict,' and 'control' its employees. But such conclusory allegations are insufficient to state a claim.").

In addition, Plaintiff alleges that Bennett, McKeithen, or Wyles failed to act *after* the other defendants allegedly used excessive force. Perforce, he does not allege that the defendants *caused* the alleged uses of excessive force. Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

18

liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. *See Rodriguez v. Lozano*, 108 F. App'x 823, 829-30 (5th Cir. 2004) (opining, where the plaintiff alleged that a warden and captain took no action after the plaintiff was attacked, that the plaintiff failed to allege that the defendants "acted or failed to act with deliberate indifference to a substantial risk of serious harm to him *before* the attack.").

The Court should dismiss these claims.

**9. Impermissible Relief**

For relief, Plaintiff seeks, among other relief, the termination of Defendants Mayes' and Frederick's employment and the prosecution of Mayes and Frederick. [doc. # 1, p. 5].

A.    Terminating Employment

Federal courts are not prison managers or personnel directors. *See Hurrey v. Unknown TDCJ Corr. Officer A*, 2009 WL 3645638, at *2 (N.D. Tex. Nov. 4, 2009). Courts "will not interfere in the administration of prisons absent an abuse of the wide discretion allowed prison officials in maintaining order and discipline." *Royal v. Clark*, 447 F.2d 501, 501-02 (5th Cir. 1971). The Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration." *Shaw v. Murphy*, 532 U.S. 223, 230 (2001); *see Turner v. Safley*, 482 U.S. 78, 84-85 (1987); *Smith v. Sullivan*, 611 F.2d 1039, 1044 (5th Cir. 1980).

Moreover, Plaintiff's request sounds in mandamus as he essentially asks the Court to, by writ, compel the non-federal official (or entity) with the authority to terminate defendants'

employment to perform his, her, or its duties.  In this respect, the Court lacks jurisdiction.[12]  *See*
*Samuels v. Emanuel*, 2014 WL 50851, at *2 (W.D. La. Jan. 7, 2014) (reasoning, where the
plaintiff asked "that the defendants be relieved from their duties[,]" that "federal district court
lacks jurisdiction to review actions in the nature of mandamus, seeking to compel state officials
to perform duties allegedly owed the plaintiff, as for example in this case . . . .").

The Court should deny Plaintiff's requested relief.

B.    Prosecuting Defendants

There is no constitutional right to have a person criminally prosecuted.  *Oliver v. Collins*,
914 F.2d 56, 60 (5th Cir. 1990).[13]  Investigating and prosecuting possible criminal activities lies
in the exclusive jurisdiction of the executive branch of government.  In the federal context, for
example, prosecuting criminal actions lies in the discretion of the Attorney General of the United
States and duly authorized United States Attorneys.  In Louisiana, prosecuting criminal actions
lies in the discretion of the Louisiana Attorney General and the various District Attorneys.  *See*
La. Code. Crim. Proc. arts. 61 and 62.

Plaintiff should direct his concerns to a local, state, or federal law enforcement agency.
He should be aware that if a prosecuting authority investigates and chooses not to file charges,
"[t]he decision to file or not file criminal charges . . . will not give rise to section 1983 liability."
*Oliver*, 904 F.2d at 281.  The courts "allow the government discretion to decide which

---

[12] "The district courts shall have original jurisdiction of any action in the nature of mandamus to
compel an officer or employee *of the United States* or any agency thereof to perform a duty owed
to the plaintiff."  28 U.S.C. § 1361 (emphasis added).

[13] *See U.S. v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to
file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.");
*Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially
cognizable interest in the prosecution or nonprosecution of another.").

individuals to prosecute, which offenses to charge, and what measure of punishment to seek."
*U.S. v. Lawrence*, 179 F.3d 343, 348 (5th Cir. 1999); *see, e.g., Hymel v. Champagne*, 2007 WL
1030207, *2 (E.D. La. 2007) (denying a plaintiff's request to investigate a correctional center:
"this Court has no authority to issue such an order and plaintiff has no constitutional right to such
an order.  Moreover, to the extent that plaintiff is alleging that a criminal investigation should be
instituted, such investigations are solely within the purview of law enforcement authorities.").

The Court should deny Plaintiff's requested relief.

**10. Official Capacity**

Plaintiff seeks relief from Defendants Frederick, Mayes, and Trenchell in their official
capacities.  [doc. # 1, pp. 2-3].

Plaintiff, however, does not allege that these defendants made any policy.  If a defendant
is not a policymaker, the defendant is "not the proper defendant for an official capacity claim . . .
."  *Truvia v. Julien*, 187 F. App'x 346, 350 (5th Cir. 2006) ("An assistant district attorney,
therefore, is not a policymaker and not the proper defendant for an official capacity claim against
the District Attorney's Office."); *see Kelley v. City of Wake Vill., Texas*, 264 F. App'x 437, 442
(5th Cir. 2008) ("Because no evidence has been presented that Officer Crawford was, at any time
relevant to this proceeding, a policymaker in the WVPD, we affirm the district court's dismissal
of the claim against him in his official capacity.").

To be sure, "the specific identity of the policymaker is a legal question that need not be
pled . . . ."  *Groden v. City of Dallas, Texas*, 826 F.3d 280, 284 (5th Cir. 2016).  However, the
undersigned does not recommend dismissing Plaintiff's official capacity claims against these
defendants *because* Plaintiff fails to plead the identity of a policymaker; rather, the undersigned

recommends dismissal because Plaintiff does not allege or even suggest that any of these defendants made policy.

**11. Conspiracy**

Plaintiff alleges, "[Warden Wyles] conspire to keeps his staffs jobs instead of taking matters seriously. [sic]." [doc. # 1-2, p. 18]. He also alleges, "[Deputy Warden Callender] conspire prisoners policy to protect his staff jobs. [sic]." *Id.*

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'" *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)). "To plead a conspiracy under Section 1983, a plaintiff must allege facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act, and 2) an actual deprivation of constitutional rights." *Shine v. Jones*, 743 F. App'x 566, 568 (5th Cir. 2018). "Charges as to such conspiracies must be based on substantial and affirmative allegations, and no mere gossamer web of conclusion or inference . . . trifles light as air . . . will suffice[.]" *Crummer Co. v. Du Pont*, 223 F.2d 238, 245 (5th Cir. 1955).

Here, Plaintiff does not allege that that Defendants Wyles or Callender agreed to commit an illegal act. "Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *See Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019). In this respect, Plaintiff fails to plead an essential element of a conspiracy claim. Accordingly, the Court should dismiss these claims.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Westley Chad-Grant Simmons, Sr.'s claim that Lieutenant Mayes utilized excessive force by choking him, digging her nails into his neck, and placing her knee and weight on his pelvis and "private area" be **STAYED** under the following conditions:

> a. If Plaintiff intends to proceed with this claim, he must, within thirty (30) days of the date the criminal proceedings against him conclude, file a motion to lift the stay;
>
> b. If the stay is lifted and the Court finds that Plaintiff's claims would impugn the validity of his conviction, the action will be dismissed under *Heck*; if no such finding is made, the action will proceed absent some other bar to suit;
>
> c. Plaintiff should not file any more documents concerning these particular claims (other than an objection to this Report and Recommendation if he chooses) in this action until the state court proceedings conclude; and
>
> d. Defendant shall not be required to answer these claims during the stay, and Plaintiff may not seek a default judgment or conduct any discovery during the stay.

**IT IS FURTHER RECOMMENDED** that—with the exception of Plaintiff's claims that Lieutenant Trenchell tazed him, that Lieutenant Mayes tazed him, and that Major Frederick tripped him and tazed him—Plaintiff's remaining claims, including his official capacity claims against Defendants Frederick, Mayes, and Trenchell, and his requests to prosecute, and terminate the employment of, Mayes and Frederick be **DISMISSED WITH PREJUDICE** for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or

response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association***, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 27th day of May, 2025.


_____
Kayla Dye McClusky
United States Magistrate Judge